GERMANIA IRON CO. v. CRAIG et al.

MIDWAY CO. v. BELDEN.

(Circuit Court, D. Minnesota, Fifth Division. November 21, 1899.)

1. PUBLIC LANDS—VALIDITY OF SCRIP—ATTEMPTED USE FOR PREVIOUS ENTRY.
   Where land scrip was used in payment for land entered in a local office, was accepted and forwarded to the department, but through an error the entry was noted on the books of the office and reported as a cash entry, and the scrip was returned to the purchaser, who completed the entry for cash, such facts did not exhaust the scrip, or affect its validity for use in making a subsequent entry.

2. SAME—PURCHASER FROM ENTRYMAN PENDING CONTEST.
   Purchasers of land from one who entered it from the government, but whose entry is in contest, who knew, or whose agents through whom the purchase was made knew, of the pendency of the contest, obtain no greater rights, as against the contestant, as bona fide purchasers, than their grantor had.

These were consolidated suits in equity to set aside a patent, and to recover lands alleged to have been patented through an error of law.

Walter Ayers and P. H. Seymour, for complainants.

James K. Redington, Henry J. Grannis, and Davis, Hollister & Hicks, for defendants.

LOCHREN, District Judge (orally). This is an interesting case, and if I had time I should be glad to review the evidence, and the law that has been cited, carefully, before announcing a decision. But, with the work which I have before me, it is clear that I shall not have time to do so, and, if I postpone the matter, it may be long before I can review the evidence, so as to have it as clear in my mind as now. So I think it better for all parties to determine the case at once.

It appears from the evidence that on the 18th day of February, 1889, the land in question was segregated from the public domain, and appropriated to private use, by the location of half-breed scrip upon it, and a contest was then pending before the secretary of the interior upon appeals taken from the local land office to the commissioner of the general land office, and thence to the secretary of the interior, between the person who had located the scrip and an alleged preemptor, with respect to this land. That contest was decided by the secretary on that day, by which he held that the location of the scrip was void, also that the pre-emption was fraudulent, and he decided against both parties to the contest. It is shown that, on the next day, Mr. Houghton James attempted to enter the land as a homestead, and his offer to enter was refused by the local land officers, for

the reason, as it was claimed, that the land was not then open for entry on account of this contest. It further appears that afterwards, on the 23d day of the same month, after the decision of the secretary had been certified to the local land office, there was a rush of several parties at the opening of the local land office in the morning, each seeking to enter this land. The decision filed by the secretary on the 21st day of December, 1894, upon the various contests which arose from the efforts that had been made to enter this piece of land, decided, as a matter of fact, that Mr. Hartman's application to enter it was the first on that 23d day of February, 1889; but he held that the prior attempt to enter it by Mr. James, on the 19th of February, was valid, and therefore his decision was against Mr. Hartman, and in favor of Mr. James. The bill of complaint in this case alleges that the secretary was in error in making that decision; that he committed an error in law, and, but for that error, the decision would have been in favor of Mr. Hartman, and he would have been entitled to a patent for the land, and that the subsequent entry of the land by Mr. Craig, under the Porterfield scrip, could not have taken place. It appears from the testimony that, after this decision of the secretary in favor of Mr. James, the latter made an entry upon this 40 acres as a homestead, and that subsequently, on the 23d of September, 1895, by reason of a bargain between himself and Mr. Craig, and for a consideration paid to him by Mr. Craig, he relinquished his homestead right upon the premises, and filed a written relinquishment of that right to the United States, and that upon that filing Mr. Craig immediately entered this land with Porterfield scrip. The title of the defendants arises upon that entry, and through conveyances from Mr. Craig as the owner of the land under this entry.

In order to succeed in this case, it is necessary that the complainants show not only that the secretary committed an error of law in allowing the entry of James, but that Hartman was at that time legally entitled to enter the land, and that he had a good equitable title. It has been decided by the circuit court of appeals in this very case (Iron Co. v. James, 32 C. C. A. 348, 89 Fed. 811) that if there was a rule in existence at that time which forbade the register and receiver of the local land office from receiving any applications to enter land while there was a contest in respect to it pending in the general land office, or before the secretary, prior to the time when the decision of the contest was communicated to the local land office, and entered upon its records and plats, then, in that case, the decision of the secretary that this land was open for entry on the 19th day of February, 1889, was error in law. All the evidence in the case, taken together, I think, fully shows that such a rule was in existence at and prior to that time,—a rule known as "Rule No. 53,"—under which, whatever was the effect of the judgment as between the parties to the contest, the land in question was not in condition to be entered as unappropriated land of the public domain until notice of that decision was given to the register and receiver of the local land office.

When the matter was before me on demurrer, it seemed to me

that, being a rule of the secretary, it might perhaps be varied by the secretary himself. At any rate, there were cases submitted from which it appeared that the rule had not always been followed in the land department, particularly the Anderson Case, 7 Land Dec. Dep. Int. 163. But I think the evidence is now satisfactory that there was such a rule in existence, which had not been abrogated, and had been by circulars made known to the local land officers, and was a rule which they were expected to follow. The circuit court of appeals held that, under such circumstances, it was error in law for the secretary himself to disregard a general rule which was in force; and the evidence shows that it was so in force; and therefore it must be held that the secretary's decision that James was entitled to make this entry on the 19th day of February, 1889, was an error in law.

As to the suggestion that the decision of the secretary went to the extent of holding that there was no such rule, I do not think that it does so hold; that is, it does not go to the extent of holding that there never had been such a rule, or that no such rule had been promulgated, or that it had been abrogated. The holding of the secretary, in effect, was that there was no such rule which would bind him, not that there was not such a rule in existence; and the circuit court of appeals, in this case, has adjudged that such holding by the secretary was error in law.

The other question which arises is whether the evidence shows that, if this error had not occurred, Hartman would have been entitled to enter the land. The secretary found, as a matter of fact, that Hartman was the first applicant; but it is objected to his application that the Porterfield scrip which he used in attempting to make that entry was void, as having already been used, and therefore exhausted, in an entry of land made by Mr. Gilman at a prior time. The evidence in relation to that is that Mr. Gilman was desirous of entering land which at the time was not subject to cash entry, but was subject to be entered with Porterfield scrip, and that he made his application and filed this scrip for that purpose; that, by some misapprehension or misconception on the part of the local land officers, the certificate, or receipt, or whatever it was, was given to Mr. Gilman as for a cash entry, and was so entered upon the books of the local land office, and so noted in the returns to Washington, and this Porterfield scrip was sent, instead of cash, to the United States treasury. It seems the treasury officials made inquiry about it, and it was returned to the general land office, as not being cash or anything that the treasury could accept as cash; and as the result of further inquiry, upon being notified of the facts by the local land officers, the scrip was returned to the local land office to be sent back to Gilman as its owner, and the land went to patent, as having been entered for cash. The scrip was returned to Mr. Gilman, and afterwards, upon suit brought by the United States on a deficit in the accounts of the receiver, involving a hundred dollars as the purchase price of this land, Mr. Gilman paid that money over to the receiver, who paid it to the government, and it was accepted, and the matter dismissed out of the suit.

Now, the result of all this is, in my judgment, that although this land was not subject to cash entry, and might have been entered by Porterfield scrip, and although it undoubtedly was the idea and purpose of Mr. Gilman when he attempted to make entry to secure the land by the use of this Porterfield scrip, still, as a result of the whole transaction, the scrip was not accepted by the government for the land, but the cash was accepted, and the scrip returned by the land department to Mr. Gilman as not used. Whether that was regular or irregular does not affect the validity of this scrip. Although it had been offered in purchase of that land, it had not been accepted, but the cash had been accepted instead, and this scrip had been returned to Mr. Gilman as unused and unappropriated. So it seems to me very clear that it was, under these circumstances, unappropriated scrip, and Mr. Gilman or any one else might use it thereafter in the location of land.

No other objection is made to Mr. Hartman's location. He was first in time, and, if no error of law had been committed by the secretary, Mr. Hartman would have been entitled to enter the land with this Porterfield scrip at that time.

The only question that remains is as to the bona fides of Mr. Hillard and Mr. James in the subsequent purchase of this land from Mr. Craig. The doctrine of bona fides is, of course, an equitable doctrine, and cannot be allowed to cause an inequitable effect. If the complainant was in fact entitled to the land, and was without laches, and pursued the only remedy he had, it is difficult to see how anybody could be a bona fide purchaser from Craig, under the circumstances. He would be substantially buying pending litigation. But, however that may be, the evidence in the case does not sustain the claim of bona fides; that is, that the grantees of Craig purchased this land without any knowledge of anything to put them upon inquiry as to the claim of Hartman. There is no question that James had full knowledge of Hartman's claim, as he was a party to this contest when it was before the secretary of the interior. So far as the other parties were concerned, Craig, Hillard, and Belden, the purchases were made, as appears from the evidence, through the agency of either Mr. Draper or Mr. Chandler, both of whom were familiar with this contest from its inception. Even if any of the purchasers from Craig had no personal knowledge of the matter, the knowledge of their agents, through whom these transactions were had, would be sufficient to charge them. It appears, in most instances, that the transactions were had entirely through agents. In many cases the principals knew very little about the details of the transactions, but trusted wholly to Mr. Draper or Mr. Chandler. I do not see why they would not be chargeable with whatever knowledge their agents had in the matter. The result is, without dwelling on the evidence at any greater length, I have come to the conclusion that the plaintiff is entitled to a decree in each case. Ordered accordingly.