**WELCH et al. v. FIRST TRUST & SAVINGS BANK OF PASADENA, CAL., et al.**

(Circuit Court of Appeals, Eighth Circuit. September 13, 1926.)

No. 7089.

1. Indians ⚖©⟫15(1)—Restrictions held to have been removed from allotments of Cherokees of less than half blood, and act removing them was valid (Act July 1, 1902 [32 Stat. 716]; Act May 27, 1908, § 1 [35 Stat. 312]).

The provision of the Cherokee Agreement, Act July 1, 1902 (32 Stat. 716) ratified by the Cherokee Nation, making homesteads allotted to members of the tribe, during the lifetime of the allottee, not exceeding 21 years from date of certificate inalienable, nontaxable, and not liable for any debt contracted by the owner, was modified as to inalienability by Act May 27, 1908, § 1 (35 Stat. 312), removing all restrictions on alienation or incumbrance as to mixed-blood Indians having less than half Indian blood, and the latter act was within power of Congress.

2. Indians ⚖©⟫15(1)—Congress has power to lengthen or shorten period of inalienability of allotted lands.

Provisions of a statute or agreement imposing restrictions on alienation of Indian lands allotted in severalty do not constitute irrevocable covenants, but Congress has power to subsequently shorten or extend the period of such restrictions.

3. Courts ⚖©⟫93(3)—Uniform construction for 18 years of statute relating to Indian lands held to create rule of property.

Uniform recognition by the courts during 18 years that the effect of a statute was to remove restrictions on alienation of lands allotted to certain classes of Indians, including their homesteads, *held* to create a rule of property.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit in equity by Thomas J. Welch and others against the First Trust & Savings Bank of Pasadena, Cal., executor of Charles M. Armstrong, deceased, and others. Decree dismissing bill, and complainants appeal. Affirmed.

A. L. Smith, of Siloam Springs, Ark., for appellants.

L. J. Roach, of Muskogee, Okl., for appellees.

Before SANBORN, STONE, and KENYON, Circuit Judges.

WALTER H. SANBORN, Circuit Judge. [1] Is a mortgage by Cherokee Indians, of less than one-sixteenth Indian blood, of their homestead, made within 21 years from the dates of their certificates of their allotments of such homesteads, to secure a debt of $10,000 contracted by them while they were the owners in possession of and still held such homesteads, lawful and enforceable against them by the mortgagee or his assigns? The court below answered this question in the affirmative, and rendered its decree of dismissal of the complainants' bill in equity to enjoin the foreclosure of such a mortgage, to remove the incumbrance thereof, and to quiet the title to the mortgaged homesteads of the Indian complainants, Samuel B. Welch and Fannie Welch, in them. They have appealed from

that decree, and the only issue in this court is whether or not the District Court's answer to that question was correct.

The answer to these questions must be deduced from the facts stated in the first question and the following provisions of the acts of Congress:

The Act of Congress approved July 1, 1902, 32 Stat. 716, ratified by the Cherokee Nation August 7, 1902, embodies the Cherokee Agreement, in accordance with the terms of which the United States, the Cherokee Nation and its members agreed that the lands of that nation should be allotted to and thereafter owned by its members in severalty. That agreement contains these terms:

"Sec. 13. Each member of said tribe shall, at the time of the selection of his allotment, designate as a homestead out of said allotment land equal in value to forty acres of the average allottable lands of the Cherokee Nation as nearly as may be, which shall be inalienable during the lifetime of the allottee, not exceeding 21 years from the date of the certificate of allotment. Separate certificate shall issue for said homestead. During the time said homestead is held by the allottee the same shall be nontaxable, and shall not be liable for any debt contracted by the owner thereof while so held by him."

"Sec. 58. The Secretary of the Interior shall furnish the Principal Chief with blank patents necessary for all conveyances herein provided for, and when any citizen receives his allotment of land, or when any allotment has been so ascertained and fixed that title should under the provisions of this act be conveyed, the Principal Chief shall thereupon proceed to execute and deliver to him a patent conveying all the right, title, and interest of the Cherokee Nation, and of all other citizens, in and to the lands embraced in his allotment certificate.

"Sec. 59. All conveyances shall be approved by the Secretary of the Interior, which shall serve as a relinquishment to the grantee of all the right, title, and interest of the United States in and to the lands embraced in his patent.

"Sec. 60. Any allottee accepting such patent shall be deemed to assent to the allotment and conveyance of all the lands of the tribe as provided in this act, and to relinquish all his right, title, and interest to the same, except in the proceeds of lands reserved from allotment."

In accordance with the provisions of sections 13 and 58, the patents for the homesteads of the complainants, furnished by the Secretary of the Interior and executed and delivered to them by the Principal Chief, conveyed to them "all the right, title, and interest of the Cherokee Nation, and of all other citizens, in and to the lands embraced in his allotment certificate." And pursuant to section 60 each of them by the acceptance of his or her patent thereby relinquished all right, title and interest he or she had in the lands of the nation allotted and conveyed to other members of the nation. The homesteads in question were allotted and conveyed to the complainants in the years 1905 and 1906 and the debt of $10,000 and the mortgage of these homesteads incumbering them were incurred and made by the complainants on September 10, 1919, within 21 years after the respective dates of their certificates of allotments and during the time when, by the terms of section 13, these homesteads were "inalienable," "nontaxable," and could "not be liable for any debt contracted by the owner thereof while so held by him."

But section 1 of the subsequent Act of Congress of May 27, 1908 (35 Stat. 312), declared:

"Section 1. That from and after sixty days from the date of this act the status of the lands allotted heretofore, or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions."

[2] The complainants were mixed-blood Indians having less than half Indian blood when this act was passed, and they were adults when they incurred the liability secured by the mortgage and executed the latter, and counsel for the assignee and owner of the mortgage insists that by this act of Congress they were qualified and empowered to incur the mortgage debt and to make the mortgage. Counsel for the complainants has prepared and submitted an exhaustive, ingenious, and persuasive brief in support of his contention that the Cherokee Agreement constituted an irrevocable contract between the United States, the Cherokee Nation, and its members, parties of the first part, and the complainants, respectively, parties of the second part. He argues that the United States, the Cherokee Nation, and its members thereby offered to grant and secure to these complainants the exclusive ownership and possession of these homesteads, their inability to convey or incumber them in any way, and that they should not be taxable during 21 years from the dates

of their certificates of allotments, on condition that they would accept that offer and would thereby release and convey all their right, title, and interest in the tribal lands of the Cherokee Nation that should be allotted to other members of the nation under the agreement; that the complainants accepted that offer and by their acceptance of the conveyance of their allotments to them conveyed and released, pursuant to section 60 of the Cherokee Agreement, all right, title, and interest in the tribal lands allotted and conveyed to other members of the tribe and that the United States and the other members of the tribe, by their acceptance of the complainants' conveyances and releases of their rights and interests in the tribal lands allotted to other members of the tribe, expressly contracted in and by the Cherokee Agreement that their homesteads during 21 years from the dates of their certificates of allotments should be and remain absolutely inalienable by them, and that they should not "be liable for any debt contracted by (them) the owner thereof while so held by (them) him"; and he earnestly and persuasively contends that by that agreement the United States itself, as well as the Cherokee Nation and its members, is estopped from avoiding or disregarding its contract by any act of Congress which by its terms deprives the complainants of their covenanted inalienability of these homesteads and their covenanted inability to make those homesteads liable for any debt contracted by them during 21 years after the dates of their certificates so that, as far as the Act of May 27, 1908, provides the destruction of this inalienability of their homesteads and of their inability to incumber their homesteads with debts incurred within 21 years, it is void.

This argument and the authorities cited in support of it have received careful examination and thoughtful consideration, but the real question it presents is the jurisdiction and legislative authority of the Congress of the United States to enact the Act of May 27, 1908, and that is not a new question. The terms of this act are so plain that they leave no doubt that the Congress and the President intended by its enactment to make the homesteads of these complainants of less than half Indian blood alienable and incumberable by them. The lands of certain classes of Seminole Indians and their associates were made inalienable for certain times by the agreement of the United States and its acts of Congress, but by the Act of April 21, 1904, 33 Stat. 204, the Congress provided that:

"All restrictions upon the alienation of lands of all allottees of either of the Five Civ-

ilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed, and all restrictions upon the alienation of all other allottees of said Tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed, etc."

The validity of this act was challenged, and the Supreme Court sustained it and adjudged that no action could be maintained to set aside conveyances made after April 21, 1904, by adult allottees, not including their homesteads, of their otherwise inalienable lands. Goat v. United States, 224 U. S. 458, 467, 32 S. Ct. 544, 56 L. Ed. 841. In Heckman v. United States, 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820, the Supreme Court held that the United States had the right by the Act of May 27, 1908, 35 Stat. 312, to extend the restrictions on the alienation of lands allotted to full-blood Cherokees. And in Choate v. Trapp, 224 U. S. 665, 673, 32 S. Ct. 565, 568 (56 L. Ed. 941) it declared, while discussing the relative effect of covenanted nontaxation and covenanted inalienability, that "exemption [from taxation] and nonalienability were two separate and distinct subjects. One conferred a right and the other imposed a limitation. * * * The right to remove the restriction was in pursuance of the power under which Congress could legislate as to the status of the ward and lengthen or shorten the period of disability."

In view of these and other similar decisions of the Supreme Court regarding this matter, little doubt remains that, if the question under consideration in this suit were submitted to that court, it would sustain the validity of the Act of May 27, 1908, and the answer of the court below.

In Landrum v. Graham, decided November 11, 1908, 22 Okl. 458, 461, 98 P. 432; and Harris v. Lynde-Bowman-Darby Co., 29 Okl. 362, 363, 116 P. 808, decided July 22, 1911, the Supreme Court of that state sustained the validity of the Act of April 21, 1904, 33 Stat. 204, to the effect that all restrictions upon the alienation of lands of either of the Five Civilized Tribes of Indians who are not of Indian blood, except as to homesteads, and all restrictions upon the alienation of all other allottees of said lands, except as to homesteads, "may, with the approval of the Secretary of the Interior, be removed, etc.," and held mortgages by Indian allottees of their allotted lands made within five years within which they were inalienable under previous acts (32 Stat. 717), but subsequent to the effective date of the Act of April 21, 1904, valid, and enforced them. To the same effect

have been decisions of that court on January 26, 1915, in Benadum v. Armstrong, 44 Okl. 637, 146 P. 34, and on September 12, 1916, in Allison v. Crummey, 64 Okl. 20, 166 P. 691.

Counsel for the appellants calls particular attention to the fact that in none of these authorities was the alienability of a homestead involved and takes the position that even if the Congress had the legislative power to remove restrictions on the alienation of surplus and other lands it had none to remove them from the sacred homesteads. That position, however, is not tenable. The restrictions on alienation and incumbrance and all the removals thereof on surplus lands and homesteads alike were made by the United States as the guardian of its Indian wards. It had the same power to remove restrictions on alienation and incumbrance from homesteads that it had to remove them from surplus and other lands, and our conclusion is that it had plenary power by act of Congress to remove the restrictions on the alienation and incumbrance of the homesteads of the complainants, that it did so remove them by the Act of Congress of May 27, 1908, that the subsequent mortgage thereof by the complainants was valid and that the decree of dismissal of their bill in equity was right and just.

[3] There is a further reason why that decree ought not to be reversed. The Act of May 27, 1908, is plain and clear, eighteen years have passed since its enactment, it expressly places on the same basis and includes homesteads within its terms in the same class as surplus lands of allottees. No decision of any court rendered during these years has been cited contrary to the decisions we have cited or to the conclusion of the court below that the Act of May 27, 1908, is valid and includes homesteads. In this state of the case the validity of this act has become a rule of property and even if we were in doubt as to its validity, or its application to homesteads, it would be our duty to sustain it. The maxim stare decisis nowhere applies more universally or with more salutary effect than to those rules and that practice under which property is acquired and secured. Men engage in business occupations, buy, sell and deal in reliance upon them. It is even more important that such rules should be certain and changeless than that they should be right. Lawyers advise their clients, business men, lawyers and laymen act in reliance upon such rules, and, while all will readily adapt themselves to erroneous rules, there is no protection nor safety under shifting rules. The rule in accordance with which this case is decided has been in force and in practice for nearly two decades. Barnes v. Poirier, 64 F. 14, 19, 12 C. C. A. 9; Shreve v. Chessman, 69 F. 785, 791, 16 C. C. A. 413; Germania Iron Co. v. James, 89 F. 811, 817, 32 C. C. A. 348. Let the decree below be affirmed.

STONE, Circuit Judge. I concur in the result and in the opinion except as to the last paragraph of the latter. I express no dissent from that paragraph but prefer to leave that matter open until a case shall be presented requiring a statement as to the rule therein set forth.