Madden, Judge,
delivered the opinion of the court:
Plaintiff in this case is the widow, and executrix of the estate of, William M. Cravens, deceased, who at the time of his death on January 24, 1947, held the grade of colonel in the United States Army, and who was at that time a resident of Garland County, Arkansas. Colonel Cravens had enlisted in the Army on March 22,1915, and had accepted an appointment in the Regular Army on December 2, 1916. He held a commission in the Army from that time until the date of his death.
On June 19, 1946, Colonel Cravens appeared before an Army Retiring Board at Letterman General Hospital, Presidio of San Francisco, California, and was found to have been permanently incapacitated for active service by reason of certain physical incapacities resulting as an incident of *425 service. He thereupon returned to Fort Douglas, Utah, his duty station, on sick leave from Letterman General Hospital, in order to await action upon the Retiring Board Proceedings. He was ordered to return to Letterman on July 16,1946, where on August 2,1946, a biopsy and deep dissection was made for metastatic cancer in the lymph glands of his neck.
Colonel Cravens was granted thirty days’ sick leave, commencing August 10, 1946, by special orders' from the hospital dated, August 8, 1946, and he left to visit friends and relatives at Camp McQuade and Los Angeles, California. On August 22,1946, he returned to the hospital for a checkup ; and on that date the Commanding General at the hospital forwarded to him by indorsement letter orders signed by the Adjutant General, dated August 9, 1946, granting him eighty-three days’ terminal leave effective August 10, 1946, and notifying him that it was contemplated announcing his retirement effective October 31, 1946, upon the completion of his terminal leave, as a result of the War Department’s review of the Retiring Board proceedings.
Colonel Cravens immediately returned to his duty station at Fort Douglas, and on August 29, 1946, by indorsement upon the letter orders, protested to the Adjutant General his contemplated retirement effective October 31, 1946, on the ground that his accrued leave credit, assuming the commencement of terminal leave on August 10, 1946, would not have permitted his retirement before November 30,1946, and he requested that November 30, 1946, be made the effective date of his retirement. By the same indorsement he protested his being charged with terminal leave from August 10 to August 22,1946, while on sick leave.
He was advised by the Adjutant General on September 11, 1946, that although he had an accrued leave credit of ninety-two days, only eighty-three days from August 10, 1946, had been granted “in order to effect his retirement at the end of the month.” The acting Adjutant General by letter dated September 11, 1946, denied Colonel Cravens’ request to be retired effective November 30,1946.
Colonel Cravens left Fort Douglas for his home at Fort Smith, Arkansas, about September 29,1946. While traveling the condition of his neck became worse, and on October 8, *426 1946, lie was taken to the Army and Navy General Hospital at Hot Springs, Arkansas, where he was admitted as a patient the same day. As a patient in the hospital from that time until December 13,1946, he received continuous and intensive treatment for cancer of the tongue and neck. He returned home over the holidays, and his condition worsened. He was taken back to Army and Navy Hospital on January 21, 1947, in a dying condition, and three days later on January 24,1947, he died of a perforated gastric ulcer and cancer of the neck.
While Colonel Cravens had been a patient at Army and Navy General Hospital on October 25,1946, the United States Army Chief of Staff, by order of the Secretary of War, issued Special Orders No. 230, which announced the retirement of Colonel Cravens effective October 31, 1946, under Section 1251 of the Revised Statutes. After the death of Colonel Cravens, in reply to an inquiry by the plaintiff as to the decedent’s status, the Adjutant General on February 11,1947, stated that the retirement orders could not be amended or revoked, as his retirement had been properly effected as required by law, and retroactive orders were illegal.
Plaintiff’s claim here is based upon the proposition that Colonel Cravens at the time of his death was still on active duty with the Army and had never been legally retired. The orders dated August 9, 1946, placing Colonel Cravens on terminal leave did not purport to retire him, but merely stated that his retirement for physical disability, effective October 31, 1946, was contemplated. The only orders ever purporting by their own terms to retire Colonel Cravens from active duty were those issued on October 25, 1946, Special Orders No. 230, which did announce his retirement effective October 31, 1946. It is the validity and effect of Special Orders No. 230 which must be determined by this court.
Prior to September 1,1946, the War Department’s procedure for administration of terminal leave provided for in AR 605-115, dated November 9, 1945, and change orders to that regulation, was set forth in WD Circular 116, dated April 20,1946. Circular 116 provided generally that where an officer was admitted to an Army hospital while on terminal leave, after receipt of the required notification from the ad *427 mitting hospital, the officer’s orders were to be rescinded in sof ar as they pertained to the unexpired portion of terminal leave and also as to the date of his separation from active service. There were in Circular 116, however, certain specific exceptions from the operation of that general provision, including an exception in the instance of Regular Army active list officers scheduled for retirement due to physical disability, such as was Colonel Cravens. This exception to Circular 116 provided that such an officer would continue on terminal leave while hospitalized, and his retirement would become effective as previously ordered.
On August 26, 1946, AR 600-115 was issued by the War Department, to become effective on September 1, 1946. AR 600-115 expressly superseded AR 605-115, the basic regulation to which Circular 116 had been issued as a supplement. As did Circular 116, the new regulation, AR 600-115, provided in part that where military personnel were hospitalized while on leave prior to separation from active duty, the fact of admission to an Army hospital would automatically rescind that part of their orders which prescribed a date of separation from active duty. And it had a similar provision with respect to suspension of terminal leave during the period of hospitalization. Unlike Circular 116, however, AR 600-115 omitted the exception noted above which had been contained in Circular 116. Indeed all but one of the specific exceptions contained in Circular 116 were omitted from AR 600-115, and that one, concerning individuals awaiting retirement because of statutory age, is not material here.
It is defendant’s position that Circular 116 rather than AR 600-115 is controlling here, and that because “Circular 116 dealt with a specific class of officers (retired Regular Army officers and Regular Army active list officers scheduled for retirement) whereas AR 600-115 dealt with military personnel in general” the two are not irreconcilable. With this we cannot agree. AR 600-115 embraces Colonel Cravens’ situation just as completely as did Circular 116, and the regulation being subsequent in point of time must be considered to have repealed any conflicting portions of the circular.
*428 Defendant also cites WD Circular 271, dated September 6, 1946, to show that the War Department did not consider that Circular 116 had been repealed by AR 600-115. It is not necessary to hold that Circular 116 had been repealed in its entirety, but only to the extent inconsistent with AR 600-115. We attribute to Circular 271 no effect material to this case. Circular 116 had cited the superseded “AR 605-115” in several places. Circular 271 merely changed those and certain other citations to “AR 600-115,” and in no respect whatever purported to change AR 600-115.
Thus it was an unmodified AR 600-115, so far as this case is concerned, in effect on October 8, 1946, when Colonel Cravens entered the Army and Navy General Hospital at Hot Springs, Arkansas. There. is no question here but that Colonel Cravens was on terminal leave orders at that time. AR 600-115 provides in part:
4. b. Military personnel hospitalised while on lea/ve.
(1) Will be regarded as sick in hospital as of date of entry into hospital.
121 Revert to leave status upon release from hospital.
(3) No deduction in leave period will be made because of hospitalization.
$$$$$$$
15. Military personnel hospitalized or ordered to temporary duty while on leave prior to separation from active duty. a. Provisions of paragraphs 4& and c will apply.
b. In the administration of such cases the fact of admission to an Army hospital will automatically rescind so much of the individual’s orders as prescribed date of separation from active duty.
o. Upon discharge from hospital the individual’s accrued leave will be recomputed considering leave used prior to hospitalization as ordinary leave for computation purposes only.
d. The provisions of this paragraph do not apply to individuals of the Regular Army who are on leave awaiting retirement because of statutory age.
Colonel Cravens answered the description in the heading of paragraph 15. Applying 4 & as 15 a says should be done, Colonel Cravens was (1) to be regarded as sick, i. e., not upon leave, as of the date of his entry into the hospital, (2) *429 was to revert to Ms terminal leave status only upon Ms discharge from the hospital and (3) was to have no deduction made from his leave period because of hospitalization. That meant that he had as much of his terminal leave still coming to him on December 13, when he was discharged as he had had when he entered the hospital on October 8.
Special Orders No. 230, issued on October 25, while Colonel Cravens was in the hospital, and applicable to this officer only, purported to retire Mm as of October 31, 1946. Special Orders No. 230 were in flat contradiction of Army Regulations 600-115,4 b and 15 a and c.
Army Regulations 600-115 was promulgated by the Secretary of War pursuant to an express provision of the Armed Forces Leave Act of 1946, of which Section 3 provides in part:
* * * leave may be taken by a member on a calendar-day basis as vacation or absence from duty with pay, annually as accruing or otherwise, in accordance with regulations to be issued by the several secretaries. Such regulation shall provide equal treatment for officers and enlisted men. [Italics added.]
The Regulation in question, then, had the force of law. We think it could not be set aside by anything other than an amendment, of general application. We tMnk it was not the intent of Congress, in so authorizing the Secretaries of the Armed Services to make law, to lodge in them the power to depart from the law which they made, in individual cases. In recent decades Congress has, of necessity, delegated to admiMstrative officers the power to fill in the details of legislation by regulations. It has taken care that these laws, made by delegated authority, be published and thus brought within the notice of those who are affected by them. It is not consistent with tMs policy, nor any policy of government by law, that an administrator should have the reserved power to follow the law he has made, or depart from it, at his discretion. It has been so decided in Germania Iron Co. v. James, 89 F. 811 (CCA 8) ; Sheridan-Wyoming Coal Co. v. Krug, 172 F. 2d 282,287 (CADC), reversed on other grounds, 338 U. S. 621; American Broadcasting Co. v. Federal Communications Commission, 179 F. 2d 437, 443 (CADC). In *430 Professor Walter Gellhorn’s Cases and Comments on Administrative Law, 1947 Ed. pp. 442 if., under the heading “Nonobservance by an Agency of its Own Regulation” are collected cases in which the courts have disapproved the departure by an executive agency from its procedural regulations.
We consider, of course, R. S. Sections 1245 and 1251 providing that incapacitated officers should be retired. But we think that the provisions of the Armed Forces Leave Act of 1946, authorizing the Regulations here in question, must have contemplated that a uniform and humane system be devised for carrying out the provisions of Sections 1245 and 1251, and that they did not contemplate that one officer be separated by special orders shortly after he was hospitalized, while other officers remained subject to the Regulations, and received their hospitalization and also their unused leave, with active duty pay. What the Secretary did on November 8, 1946, was the lawful and orderly way to correct a mistake if he concluded that the former regulations were too generous. On that date he amended paragraph 15d of Army Regulations 600-115 to cover situations such as that of Colonel Cravens. Under that amendment, terminal leave time did not stop running because of hospitalization of officers on leave awaiting retirement for physical disability. This regulation was general, and applicable to all officers so situated. If, then, the Secretary had issued a new order for Colonel Cravens’ retirement, consistent with the amended regulation, such an order would have been effective. But his Special Orders No. 230 were ineffective because they violated the Army Regulations. Colonel Cravens was therefore still in an active status at the time of his death, and the plaintiff, as his widow and executrix, for the benefit of herself as widow and executrix, and for the benefit of surviving children, if any, of Colonel Cravens, is entitled to recover.
Entry of judgment will be suspended to await the filing of a stipulation by the parties showing the amount of the judgment, and the person or persons to whom it should be payable.
It is so ordered.
Howell, Judge, and Whitaker, Judge, concur.