## HUSSMAN *v.* DURHAM.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 66. Argued and submitted January 5, 1897. — Decided January 18, 1897.

In 1858, C. located a bounty land warrant issued to L. under the act of March 3, 1855, c. 207, taking a certificate of location, which was recorded in the office of the recorder in the county in which the land was situated. No patent was issued. In 1864, under authority of the act of June 23, 1860, c. 203, but without notice to C., the Secretary of the Interior cancelled that warrant. It was admitted that the assignment upon it, purporting to be that of L., was a forgery. On the records of the land department up to 1886 it appeared that a full and equitable title to the land had passed to C., and in that year D. having obtained conveyances from C., applied to the land department for leave to purchase on payment of the regular price and his application was granted. Meanwhile the land had been sold for non-payment of state taxes, and the tax title had passed into H. D. commenced suit against H. to quiet title, and the Supreme Court of Iowa sustained the decree of the trial court in his favor. *Held,*

(1) That as the Supreme Court of the State held that the equitable title apparently conveyed by the proceedings in the United States Land Office in 1858 was of no effect, and the tax titles based thereon of no validity, it was apparent that a right claimed under the authority of the United States was denied, and, therefore, this court had jurisdiction;

(2) That, though a formal certificate of location was issued in 1858, there was then in fact no payment for the land and the government received nothing until 1888; that during these intervening years whatever might have appeared upon the face of the record the legal and the equitable title both remained in the government; that the land was, therefore, not subject to state taxation; that tax sales and tax deeds issued during that time were void; that the defendant took nothing by such deeds; that no estoppel can be invoked against the plaintiff; that his title dates from the time of payment in 1888; that the defendant does not hold under him and has no tax title arising subsequently thereto; and that there was no error in the decision of the Supreme Court of the State.

THIS case comes up on error to the Supreme Court of the State of Iowa. The facts are these: On May 19, 1858, Robert Craig located bounty land warrant No. 27,911, issued to William Long under the act of Congress of March 3, 1855, c. 207, 10 Stat. 701, upon the land in controversy, and obtained from the proper land officer a certificate of location. This certificate was recorded in the office of the recorder of Carroll County, the county in which the land is situated. No patent was issued thereon. On February 1, 1864, the Secretary of the Interior cancelled the land warrant under authority of an act of Congress, of date June 23, 1860, c. 203, 12 Stat. 90. This act provided that whenever it should appear that any land warrant was lost or destroyed, whether the same had been sold or assigned by the warrantee or not, the Secretary of the Interior should cause a new warrant to be issued, which new warrant should have all the force and effect of the original, and upon such action the original warrant was to be deemed and held to be null and void, and any assignment thereof fraudulent; and further, that "no patent shall ever issue for any land located therewith, unless such presumption of fraud in the assignment be removed by due proof that the same was executed by the warrantee in good faith and for a valuable consideration." The second section authorized the Secretary

to prescribe such rules and regulations as might be appropriate for carrying the act into effect. It was alleged in the petition filed in this case that the assignment on the warrant purporting to be that of Long, the warrantee, was a forgery, and this allegation was admitted by the defendant. The action of the Secretary was taken without, so far as appears, any notice to Robert Craig. Nothing was done either in the local land office or in the land department at Washington to formally cancel the certificate of location. Up to the year 1886 the records of the land department showed on their face a full equitable title passing to Robert Craig by virtue of his certificate of location and payment therefor in a land warrant. During these years the land was subjected to taxation by the officers of Carroll County, Iowa, and was sold for non-payment of taxes; and the titles under such tax sales passed to Bernhard Hussman, defendant below.

In 1886 William H. Durham, plaintiff below, having obtained conveyances from Craig, applied to the land department for leave to purchase the land upon payment of the regular price. This application was granted under authority of Rule 41 of the Department of the Interior, published on July 20, 1875, which reads as follows:

"When a valid entry is withheld from patent on account of the objectionable character of the warrant located thereon, the parties in interest may procure the issuance of a patent by filing in the office for the district in which the land is situated an acceptable substitute for the said warrant. The substitution must be made in the name of the original locator, and may consist of a warrant, cash or any kind of scrip legally applicable to the class of lands embraced in the entry."

The money, $150, was paid by Durham in 1888, and a patent issued of date October 3, 1889, to Robert Craig, his heirs and assigns. It recited a payment by "F. M. Hunter, trustee for Robert Craig," and was delivered to said trustee, to be held until the rights of these parties could be judicially determined. Thereupon Durham commenced this suit in the District Court of Carroll County, Iowa, to quiet his title as against the defendant, holding the tax titles. The District Court entered

a decree in his favor, which was affirmed by the Supreme Court. *Durham* v. *Hussman,* 88 Iowa, 29.

*Mr. C. C. Cole* for plaintiff in error.

*Mr. C. C. Nourse,* for defendant in error, submitted on his brief.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

A motion to dismiss was submitted by the defendant in error, but as the Supreme Court of the State held that the equitable title apparently conveyed by the proceedings in the United States Land Office in 1858 was of no effect, and the tax titles based thereon of no validity, it is apparent that a right claimed under the authority of the United States was denied, and, therefore, this court has jurisdiction.

On the merits of the case we remark that while it is undoubtedly true that when the full equitable title has passed from the government, even prior to the issue of a patent conveying the legal title, the land is subject to state taxation, *Carroll* v. *Safford,* 3 How. 441; *Witherspoon* v. *Duncan,* 4 Wall. 210; yet until such equitable title has passed and while the land is still subject to the control of the government it is beyond the reach of the State's power to tax. *Railway Company* v. *Prescott,* 16 Wall. 603; *Railway Company* v. *McShane,* 22 Wall. 444; *Tucker* v. *Ferguson,* 22 Wall. 527, 572; *Colorado Company* v. *Commissioners,* 95 U. S. 259. Therefore, the validity of the tax titles held by plaintiff in error depends upon the question whether the equitable title to the land had passed from the government to Craig.

We remark, in the second place, that under such a tax law as exists in Iowa there is no privity between the holder of the fee and one who claims a tax title upon the land. The latter title is not derived from but is antagonistic to the former. The holder of the latter is not a privy in estate with the holder of the former. Neither owes any duty to the other, nor is

estopped from making any claim as against the other. *Hefner* v. *Northwestern Insurance Co.*, 123 U. S. 747, 751; *Turner* v. *Smith*, 14 Wall. 553; *Crum* v. *Cotting*, 22 Iowa, 411; Burroughs on Taxation, 346.

Neither can it be said that on the issue of a patent the title by relation always dates as of the time when the certificate of location was issued. A title by relation extends no further backwards than to the inception of the equitable right. If no equitable right passed by the surrender of the land warrant and the certificate of location in 1858, but only by the payment of the money in 1888, the legal title created by the issue of the patent has no relation back of this later day. In other words, the United States does not part with its rights until it has actually received payment, and if by mistake, inadvertence or fraud a certificate of location (which is equivalent to a receipt) is issued when in fact no consideration has been received, no equitable title is passed thereby; and a conveyance of the legal title does not operate by relation back of the time when the actual consideration is paid. These views have been recognized in Iowa, as elsewhere. Thus in *Reynolds* v. *Plymouth County*, 55 Iowa, 90, it appeared that certain forged and counterfeit agricultural college scrip was located upon a tract of land, and that, after the issue of the certificate of location and before any patent, state taxes were assessed and levied thereon. Thereafter the forgery was discovered, the locator substituted genuine scrip or money, and a patent was issued. The court held that the taxes thus assessed and levied during the interval between the original illegal entry and location and the subsequent substitution of genuine scrip or money were invalid, saying: "In order to protect a title, or to attain the ends of justice, the courts will, under the doctrine of relation, which is a fiction of law, hold that a title began at the date of an entry or location upon the public lands. But this doctrine cannot be invoked to burden the holder of a title, and require him, in violation of justice, to pay taxes when he held neither the equity nor title of the lands." A similar doctrine was announced in *Calder* v. *Keegan*, 30 Wisconsin, 126. See also *Gibson* v. *Chouteau*, 13 Wall. 92,

in which this court, on page 101, said : " The error of the learned court consisted in overlooking the fact that the doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice, and is only applied for the security and protection of persons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title. The defendants in this case were strangers to that party and to his equitable claim, or equitable title, as it is termed, not connecting themselves with it by any valid transfer from the original or any subsequent holder."

It is, however, said by counsel for plaintiff in error that, as it does not appear that any notice was given to Craig, the finding of the Secretary of the Interior that the assignment was a forgery, and the order directing the cancellation cannot be regarded as binding upon Craig or affecting the rights vested in him by the surrender of the land warrant and the issue of the location certificate. In other words, as in this respect the Secretary of the Interior is a tribunal with limited and special jurisdiction, proof of notice to the parties interested is essential to sustain the validity of any adjudication. Not questioning the proposition of law, as thus stated, there are two sufficient answers to its applicability to the present case : First, as Craig and those claiming under him thereafter dealt with the government upon the assumption that the adjudication was binding, one who is not in privity with them cannot challenge their acceptance of that adjudication ; and, secondly, on the record the parties hereto have admitted that the assignment of the warrant by Long to Craig was a forgery. Craig, therefore, had no title to the warrant, and this formal surrender by him of the instrument was an invalid act, neither defeating the title of Long, nor releasing the government from its promise to convey to Long, or his genuine assignee, the specified number of acres.

The case, therefore, stands in this way : Confessedly, though a formal certificate of location was issued in 1858, there was then in fact no payment for the land and the government received nothing until 1888. During these intervening years

whatever might have appeared upon the face of the record the legal and the equitable title both remained in the government. The land was, therefore, not subject to state taxation. Tax sales and tax deeds issued during that time were void. The defendant took nothing by such deeds. No estoppel can be invoked against the plaintiff. His title dates from the time of payment in 1888. The defendant does not hold under him and has no tax title arising subsequently thereto.

With respect to the suggestion of counsel that it is a hardship that one who has changed wild land into a farm and greatly improved it should, after the lapse of many years, be deprived of the benefit of those improvements by reason of an undisclosed defect in the record title, it is sufficient to say that there is nothing in this record to indicate that the defendant ever made any improvements or expended a dollar otherwise than in paying for the tax title. We cannot, of course, take the intimation of counsel in the brief as evidence of a fact not appearing on the record. Further, so far as the money paid for taxes is concerned, it is familiar law that a purchaser of a tax title takes all the chances. There is no warranty on the part of the State. Beyond this, the statutes of Iowa contemplate a return of taxes when it is disclosed that the land was not subject to taxation. 1 McClain's Rev. Stat. 1888, § 1387, p. 353. We see no error in the decision of the Supreme Court of Iowa, and it is, therefore,

*Affirmed.*