BELLINGER, District Judge.
When the facts in this case were considered by me on demurrer to the indictment in the case of the United States v. Ellis, and other like cases, I expressed the opinion that the rule adopted by Judge Deady in United States v. Ball (C. C.) 31 Fed. 667, did not apply upon the case so stated. The rule laid down in United States v. Ball is to the effect that where a settler under the homestead act, pending his residence and prior to the issue of a final certificate, cut and removed timber for export and sale, and after-wards obtained a certificate of his compliance with the law, he was not liable to the United States for damages for cutting such timber. I distinguished between the two cases on the ground that in the cases under consideration the right to the title had not matured in the party by whose authority the timber was cut. A further examination of the case of United States v. Ball shows that there is no ground for this distinction. The rule laid down in the latter case is, as above stated, that, where there is a subsequent compliance with the conditions upon which the settler becomes entitled to a certificate of title, he is not liable for timber cut and sold in the meantime. The rule is the same as in the case of possession under a contract of purchase, where the vendee cuts and removes timber under circumstances that would give the vendor a right in equity to an injunction to prevent the impairment of the value of the property pending the *1017 performance of the contract, and while it might, by the failure of the vendee, be thrown back on the vendor’s hands. The right of the vendee in such a case relates back to the vendee’s entry under his contract of purchase, and it is not material to his defense in an action for damages for having cut and removed timber that he had not at the time complied with the conditions which entitled him to a certificate of title.
The complaint charges Ellis with four trespasses—one upon the" S. W. ¡¡4 °f the N. E. 34 of section 23 in township 9; one upon the S. W. 34 °f the N. E. 34 of section 32 in township 9; one upon the S. E. 34 of the N. W. 34 of said section 32; and one upon the S. 34 of the S. W. 34 and lot 4 of section 3 in township 9. These several parcels of land will be referred to by numbers, in the order in which they are above described. The total number of trees cut upon the four parcels is 858, containing 649,800 feet, board measure, of the value, standing in the tree, of 60 cents per thousand; when cut into logs, $1 per thousand; when hauled to the mill, $2. The complaint alleges the value of this timber when sawed into lumber to be $10 per thousand feet. The answer denies that it is of any greater value than $8 per thousand feet.
The timber taken from parcel 1 was purchased in good faith from J. B. Stoddard, who was at the time a settler on the land as a homesteader. Thereafter, and before a full compliance with the homestead laws, so as to entitle him to title, Stoddard relinquished his homestead for the purpose of acquiring title by entry with forest reserve scrip, and simultaneously with his relinquishment he did make such entry, and acquired title. Had he completed his title under the homestead laws, neither he nor his vendee would have been liable, under the rule of United States v. Ball, for timber cut and sold in the meantime. Does it alter the case that he abandoned one method, and acquired title by another? It is clear that, as to the willfulness of what was done, it does not do so. Upon principle, it makes no difference whether a person who goes into possession of real property under a contract of purchase acquires his title under such contract, or under a new and substituted contract. There was no abandonment of the entry, or relinquishment of the purpose for which it was made. The substituted method of acquiring title was in operation from the moment the first method was relinquished. The possession was at all times lawful. There was no damage to the government in the substituted contract. It may be open to question whether the title acquired under the scrip purchase can be said to relate back to the homestead entry, but, with or without such relation, the consequence is the same. There was no trespass in either case. The reason why a person who goes into possession of real property under a contract of purchase, and abandons or fails to comply with his contract, is liable in trespass for the profits of the land, or waste committed, is because the vendor has the property thrown back on his hands, impaired in value. And this event must happen before a right of action arises. There has been no moment of time when the government has been damaged. It has been threatened with damage in the risk mentioned, and it would have had good right to *1018 an injunction restraining the act which threatened its interest. But its interests have not been impaired, and without this, or damage or injury, it cannot recover as for damage or injury.
The timber cut from the third and fourth parcels of land was purchased from one J. A. Brown and one Fred Tietgen. Brown and Tietgen were homesteaders at the time. Thereafter, like Stoddard, they relinquished their homestead claims for the purpose of acquiring title by purchase with forest reserve scrip, and did so acquire title. These cases come within the rule above stated.
As to the timber cut from the second parcel of land, it appears that Stoddard on June 6, 1897, entered on such land and made application therefor as a homestead; but concluding that it was mineral land, and not subject to be taken as a homestead, on April 19, 1898, he relinquished his homestead claim. Thereafter, and on July 15, 1898, his wife, Esther A. Stoddard, located the • east half of said parcel, together with another parcel, as mineral land, and she duly tendered to the United States the purchase price of the same as mineral land. Long prior thereto, and in 1895, Thomas McEwan, Mike Lynch, and Joseph A. Mikel located this land under the placer mineral acts of the United States. This location was purchased by Mrs. Stoddard, following that made in her own right. Under this location a good deal of work has been done in cutting and repairing ditches and in mining for gold. Stoddard testifies that the pay dirt will yield from 30 to 60 cents per yard, at a cost of about 30 cents for working, and that when the ground is properly cleared the cost of working will be much less. He further testifies that he has taken “lots” of gold from the claim, and that the timber cut therefrom has been cut with the object of clearing the ground in order to mine it, except that some trees likely to fall on the residence, which is an exceptionally good building, under the circumstances, were cut to avoid such a danger. My conclusion is that the land from which this particular timber was cut is mineral land, subject to be taken under the placer mineral laws of the United States, and that the timber for which the defendant is charged, except as to that standing near the dwelling, was cut in preparing for and in mining such land.
The findings and judgment of the court are, in áccordance with this opinion, for the defendant.