**UNITED STATES of America, Appellant,**

**v.**

**Paul ETCHEVERRY and John Etcheverry, Appellees.**

**No. 5173.**

United States Court of Appeals Tenth Circuit.

Jan. 30, 1956.

---

Roger P. Marquis, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Donald E. Kelley, U. S. Atty., Denver, Colo., and Elizabeth Dudley, Washington, D. C., on the brief), for appellant.

Eugene H. Mast, Grand Junction, Colo., for appellee.

Before MURRAH and PICKETT, Circuit Judges, and MELLOTT, District Judge.

PICKETT, Circuit Judge.

The United States brought this action against the defendants, Paul Etcheverry and John Etcheverry, to recover damages for alleged trespass on certain lands of the public domain in Colorado, and to enjoin further trespass. The Kerogen Oil Company, a corporation, was in possession of the lands by virtue of valid placer mining claims. The defendants leased the lands from the Kerogen Oil Company for grazing purposes and grazed cattle and sheep thereon during the years 1951 and 1952. On July 1, 1953, the Kerogen Oil Company made application for a patent to the mining claims, which was allowed upon payment of the required purchase price, and a final certificate was issued January 8, 1954, showing it to be entitled to a patent. The United States concedes that after the issuance of the final certificate, it was not entitled to a restraining order. This appeal is from a judgment denying the recovery of damages for trespass prior to the issuance of the final certificate.

Two questions are presented: (1) Does the owner of a valid mining claim have the right to lease or to use the surface of the claim for the grazing of livestock not incident to the mining operations; and (2) After the United States accepts payment and issues a final certificate or a patent to mining claims, may it recover damages for trespass committed prior to the issuance of the final certificate or patent but during the time the land was held under a valid mining location?

30 U.S.C.A. § 22 provides that "all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States * * * under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not in-

entitled to full indemnity over, turned the case on the question of proximate cause. Though the case was properly decided on the question in issue of indemnification, query as to the statements on proximate cause. The case quotes the Restatement of Torts, comment on Sec. 441(1)b on the definition of active and passive negligence. No references are made to Sec. 440 (superseding cause) nor to Sec. 447 (foreseeability test).

consistent with the laws of the United States."

After a valid mining location is made, 30 U.S.C.A. § 26 gives to the locator "the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, * * *."

■■ The law is well settled by innumerable decisions that when a mining claim has been perfected under the law, it is in effect a grant from the United States of the exclusive right of possession to the same. It constitutes property to its fullest extent, and is real property subject to be sold, transferred, mortgaged, taxed, and inherited without infringing any right or title of the United States. Ickes v. Virginia-Colorado Development Corp., 295 U.S. 639, 55 S. Ct. 888, 79 L.Ed. 1627; Wilbur v. U. S. ex rel. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445; Clipper Mining Co. v. Eli Mining & Land Co., 194 U.S. 220, 24 S.Ct. 632, 48 L.Ed. 944; St. Louis Mining & Mill Co. v. Montana Mining Co., 171 U.S. 650, 19 S.Ct. 61, 43 L.Ed. 320; Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735.

Although Section 22 declares that all valuable mineral deposits belonging to the United States shall be free and open to exploration and purchase, there is no specific provision in the statute which gives to a locator the right to use the lands for purposes of profit or to lease lands for purposes other than for exploration and production of minerals. In all the cases above cited, where broad language was used in connection with the exclusive right of possession by the locator, the controversy arose over the legality of mining claims or the right of possession of the claim for mining purposes. The right of the locator to use the surface for purposes other than for mining, or the right to dispose of timber, grass or other materials on or under the surface of the lands was not under consideration. We construe these cases to hold that the exclusive possession of the surface of the land to which the locator is entitled is limited to use for mining purposes.

■ We are satisfied that under the statute the mere location of a mining claim gives to the locator only the right to explore for and mine minerals, and to purchase the land if there has been a compliance with the provisions of the statute. As against third parties, the locator or his assigns have exclusive right to use the surface of this land, but as against the United States, his right is conditional and inchoate. Shiver v. United States, 159 U.S. 491, 16 S.Ct. 54, 40 L.Ed. 231. The land is no longer a part of the public domain so far as the minerals are concerned, and it is not open to relocation until the rights of a former locator have terminated.

■ In Teller v. United States, 8 Cir., 113 F. 273, 280, the facts as to the mining claim and the alleged trespass were the same as those in the instant case except that timber, not grass, was sold by the locator. The court recognized the public policy of making gratuitous grants to citizens of the possessory right of mineral claims, but it was stated that the United States "has not seen fit to give away the land containing the minerals, but, on the contrary, has adopted the policy of selling the same to the locator, if he desires to purchase, on terms fixed by the acts of congress." It held that the location segregated and withdrew the land from the public domain to the extent that a rival claimant could not locate on the same lands for mining purposes. It was said that the location gave no more than the present and exclusive possession of the land for the purpose of mining and did not divest the legal title of the United States or impair its right to protect the land from trespass or waste. It was held that the locator's right of possession did not segregate the land from the public domain for all purposes and appropriate it to the locator's private use. The court said that the land did not cease to be part of the public domain until absolute title was acquired in the manner provided by statute. United States v. Rizzi-

nelli, D.C.N.D.Idaho, 182 F. 675, is to the same effect. We think the reasoning of the Teller and Rizzinelli cases is sound and we hold that under the statute, general grazing rights of the public domain are not included in the possessory rights of a mining claim. To hold otherwise would permit the owner of a valid mining claim, with no intention of purchasing the fee, to strip the surface of the land of all the valuable property and materials thereon to his own profit, and then to abandon the claim.

■ The trial court, applying the doctrine of relation back, denied recovery of damages for trespass on the public domain because upon the issuance of final certificates, which entitled the owner of a mining location to a patent, the United States relinquished all of its interest in the property in question and could not maintain an action for trespass committed on the lands prior to the issuance of the final certificates. The authorities sustain this conclusion. In United States v. Freyberg, 7 Cir., 32 F. 195, a homestead entryman sold timber from the entry prior to the issuance of a final certificate or patent. The court denied recovery by the United States upon the ground that after the timber was taken, the entryman was issued a patent. It was held that upon the issuance of the patent, the title related back to the date of the original entry. The same question arose in United States v. Ellis, 9 Cir., 122 F. 1016, and the decision was the same as in the Freyberg case. Teller v. United States, 8 Cir., 117 F. 577, is to the same effect except that it was held there that when the final certificate issued, it related back to the date of the application for patent. In Reed v. Munn, 8 Cir., 148 F. 737, 757, certiorari denied 207 U.S. 588, 28 S.Ct. 255, 52 L.Ed. 353, it was said: "So long as the locator or his assignee performs the required amount of work, his right of possession is exclusive against every person and against the United States. He may never obtain the patent, but when it does issue, it has relation back to the loca-

tion." In United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 26 S.Ct. 282, 286, 50 L.Ed. 499, the lumber company purchased timber from the entrymen on timber land before the patents had issued. In speaking of the doctrine of relation, the court said:

"* * * If it be contended that, by virtue of the contracts for the sale of timber, it had acquired some interest in the lands prior to the issue of patents, it is sufficient to say that, by the doctrine of relation, the patents, when issued, became operative as of the dates of the entries. It is true that this doctrine is but a fiction of law, but it is a fiction resorted to whenever justice requires. It is that principle by which an act done at one time is considered to have been done at some antecedent time. It is a doctrine of frequent application, designed to promote justice. Thus, a sheriff's deed takes effect not of its date, but of the time when the lien of the judgment attached. The ordinary railroad land grants have been grants in praesenti, and under them the title has been adjudged to pass, not at the completion of the road, but at the date of the grant. Leavenworth, Lawrence & Galveston Railroad v. United States, 92 U.S. 733, 23 L.Ed. 634; St. Paul, M. & M. Railway Co. v. Phelps, 137 U.S. 528, 11 S.Ct. 168, 34 L.Ed. 767; St. Paul & Pacific R. Co. v. Northern Pacific R. Co., 139 U.S. 1, 11 S.Ct. 389, 35 L.Ed. 77; United States v. Southern Pacific Railroad, 146 U.S. 570, 13 S.Ct. 152, 36 L.Ed. 1091. A patent from the United States operates to transfer the title, not merely from the date of the patent, but from the inception of the equitable right upon which it is based. Shepley v. Cowan, 91 U.S. 330, 23 L.Ed. 424. Indeed, this is generally true in case of the merging of an equitable right into a legal title. Although the patents in this case were not issued until after the

sales of the timber, yet, when issued, they became operative as of the date of the original entries. This doctrine has frequently been recognized by this and other courts. * * * "

See also Knapp v. Alexander-Edgar Lumber Co., 237 U.S. 162, 35 S.Ct. 515, 59 L.Ed. 894; Hussman v. Durham, 165 U.S. 144, 17 S.Ct. 253, 41 L.Ed. 664; United States v. Bagnell Timber Co., 8 Cir., 178 F. 795. All of these decisions on relation back presuppose that the United States has paramount title to the land and the right to protect it from trespass and waste.

When a mining location is perfected and there has been compliance with the statute, the owner has an absolute right to purchase the fee title to the land at any time thereafter. Under the facts of this case, it would not serve the purpose of justice to permit the United States to recover damages for the grazing of grass on lands which the owner of a valid claim had an unquestioned right to purchase, where he has later exercised his right and received the fee title. The United States has suffered no damage.

Affirmed.